Mr. Bertram, you can come up when you are ready, and please let me know if you'd like to reserve any time for rebuttal. Thank you very much, Your Honor. I would like to reserve two minutes for rebuttal. Thank you. My name is Gary Bertram. I represent the petitioner Gerald Harris in this case. The case law is clear that when a criminal defendant tells his attorney he wants to appeal a judgment, the attorney has to file the notice. It doesn't matter if there's no grounds for appeal. It doesn't matter if the appeal has been waived. It doesn't matter if the appeal might make the case worse. The attorney has to file the notice. In his State habeas petition and also in the Section 2254 petition, Mr. Harris alleged that his attorney was ineffective because he failed to file a notice of appeal after Mr. Harris had directed him to do so. But it has to be an express instruction, doesn't it? It does. And so isn't that the crux of the problem, though? Was this an express instruction? Our position is that it was. It was in terms of what Mr. Harris said he told his attorney and then also the response of the attorney to that initial statement. The language, the specific language in his declaration is important. Mr. Harris said that after the State court denied relief, he, and this was exactly what he said, asked Ms. Singh if she would appeal the denial. And I read that as him recounting. I mean, isn't that susceptible of just an inquiry? Is she going to look into it? Is she going to think about it rather than a command, you know, file? I want you to file an appeal. He certainly could have been more clear in his description of that in his declaration. But I think that if that was what… Isn't that the problem, though, right? So the problem is if he could have been more clear and if it's not an explicit instruction, our case law says that we have to take a different sort of tact here. Your Honor, going back to the initial point, I think that if he was trying, if he was saying something different than I told my attorney to appeal, I think he would have said, I asked my attorney if we should appeal. I asked my attorney if there was something to appeal. This is a pro se defendant. And what he said is he asked Ms. Singh if she would appeal the denial. And while it is not as direct as I wish it were and probably as direct as Mr. Harris, which it was, I think construing that liberally, as we should do with pro se pleadings, I think that is sufficient to show an express directive to his attorney to appeal. If the Court feels that that statement itself is not sufficient to show an express directive, I think what he said about his counsel's response to him makes it that way, or at least his attorney, she construed it to be that way. He said that in response to him saying that, his attorney said that she would contact his appellate counsel about this issue. Now, we know, based on the little Post-it as an exhibit, that she never contacted his appellate counsel. And the district court construed all of it, but especially construed that second statement in his declaration to be that, well, trial counsel would contact appellate counsel to see if this could be appealed or if there were grounds for appeal or what should be raised. And I think there are two reasons why that construction is really not reasonable given these facts. First of all, she never contacted the appellate attorney. If counsel needed to contact the appellate attorney because she wasn't aware of whether you could appeal an SB 620 and if you could what the grounds would be, she never contacted the appellate attorney. And so if she needed guidance in terms of was this an open question and should we appeal and what could we appeal, then she would have contacted Mr. Warren or Mr. Harris's previous appellate attorney and the Post-it note that was attached. So your argument is, your argument now then is that the attorney should have done that and failing to do so was ineffective. Is that essentially the argument? The duty to consult was not really presented by Mr. Harris below in the State pleadings. But I think the duty to consult is important here in looking at the response. Well, but if it wasn't raised, then we can't, we can't. That's correct. But the government keeps talking below in its papers about the lawyer is not dumb. The lawyer is going to do what a lawyer is supposed to do. And so when we talk about a duty to consult, if counsel needed to consult with the appellate attorney to figure out what they would do, then she would have consulted with the appellate attorney. The fact that she never contacted the appellate attorney shows that this wasn't some open question, should we appeal, should we not appeal, what should we appeal. I see. So your argument is the fact that she didn't go on to do the consultation means that she understood it as a clear instruction and not something that she needed to poke around at further. Exactly, Your Honor. And the second point with respect to the second part of this declaration about what his attorney said to him is that if the counsel needed to consult with the attorney and it was sort of left open at the time they spoke, it's not exactly clear when they spoke, but it looks like they spoke right after the hearing in the courtroom. If it was left open at that point, then for sure the attorney would have contacted Mr. Harris at some point later on and said, well, I talked to Mr. Warner or I researched this myself. So I understand the argument, and I'm glad that Judge Thomas clarified your position, but if that's the case, though, then we come back to the standard, though, right, which is can any reasonable jurist believe that that statement was maybe unclear, right, or that statement was not a direct or explicit instruction? Isn't that sort of the problem that we find ourselves in? That is the standard. Could the state court have denied this on a different ground? So as I understand it, the state court said nothing. Summary denial. You're right, Your Honor. Yes. So what the district judge did in response to the motion for reconsideration was to consider these various hypothetical meanings that this statement might have made and said, well, if any of them are reasonable, then this wasn't an explicit instruction to appeal. That's exactly right, Judge. Is that what our case law requires us to do, which is to come up with all of the possible things this might have meant so that the state court basically is better off saying nothing? Well, they have to be reasonable. They have to be possible bases for the denial that are reasonable. I mean, you could say that. You could say that summary denial opens up the universe of possibilities for why the court may have denied. And the government took advantage of that and wrote that long, hypothetical, California Supreme Court decision that included a lot of different aspects. But they have to be reasonable. And the point I try to make in my briefs and the point I really want to make today and the point that Judge Thomas made better than I did is that if this had not been an express statement at the time of the hearing when they had this, I think, brief interaction following the denial of SB 620 relief, trial counsel would have acted differently. Trial counsel would have contacted the appellate attorney to figure out what to do. Or trial counsel, at a minimum, would have contacted Mr. Thomas and said, okay, I've looked into this. We have no basis to appeal, and so I'm not going to appeal. The fact that there was complete silence from trial counsel to the appellate attorney and also to Mr. Thomas I think is strong evidence that counsel understood this at the time the statement was made to be, I want to appeal. Mr. Thomas, he's been 40 years to life for a murder conviction and a gun enhancement. Mr. Harris. Mr. Harris. Oh, I'm sorry. It's all right. I apologize. And this was really his last stab at it in terms of state proceedings, state direct proceedings. And so it makes complete sense that Mr. Harris told his attorney he wanted to appeal. What happened? Why wasn't the notice filed? I don't know. But I think the record is there's enough to meet that express directive standard, and I think the district court's conclusions of the contrary were not reasonable. And I have a minute and 26 minutes. Well, I'll put two minutes on the clock for your rebuttal. Thank you very much.  Mr. Feinstadt. Good morning. Good morning. May it please the court. Deputy Attorney General Max Feinstadt on behalf of the warden. Dishner's argument is that the interpretation of his phrase is that he asked his attorney about an appeal or asked if she would appeal. He says that one interpretation of this is that that was an express directive to appeal. But that's not the question. It's not whether it was a possible interpretation or even a reasonable interpretation or even the most likely interpretation of that phrase. The question is, is there any other reasonable interpretation of the phrase? And as we pointed out in our briefing, this could easily have been Dishner asking his attorney whether there were reasonable grounds to appeal. Why would that be? A defendant doesn't need reasonable grounds to appeal. A defendant has the right to appeal, which is when a lawyer doesn't file a notice of appeal when they're instructed to. There's presumed prejudice. Even if everybody would agree an appeal would have had no basis, no merit. It just seems that we're being asked to parse a pro se litigant statement, I asked my lawyer if she would appeal, to which the answer should have been yes or no. And she said, I'll talk to your appellate counsel. From a pro se litigant, why is it reasonable to assume that he was saying, in essence, I have a right to appeal, I know I do, but tell me, is it worth it? Is there merit to it? Is it possible I would win? I mean, those aren't the things that go into deciding when a criminal defendant decides to appeal. They appeal because they have a right to appeal. It certainly could be here. I mean, we had a situation where he just had a direct appeal. He had raised his constitutional claims. They had been affirmed. The judgment had been affirmed. And he had had this limited remand for the imposition of a gun enhancement. So this was a very limited situation that he was coming back for. So asking your attorney, hey, is there any reason to appeal this? But that's not what he said. He said, would you appeal? Would she appeal? Right. Like, is there a reason to appeal? Like, would you appeal in this situation? That is a reasonable interpretation of that phrase. And her response also indicates that it wasn't a directive to appeal. Because, as the Supreme Court has pointed out, filing a notice of appeal is a purely ministerial task. So if your client says to you, I would like you to file a notice of appeal, then you go file a notice of appeal. Counsel, is there an analysis that we have to make here about whether or not this was an indigent or not indigent but a level of sophistication of the defendant? Is that part of the analysis? I mean, here we have someone who was perhaps had an appeal before but maybe didn't understand that he needed to be as explicit with the particular words. The doctrine of liberal construction applies to a pro se's legal filing. So if they misstate the standard in their legal filings or if they ask for a certain type of relief when they should be asking for a different type of relief, they mistitle a pleading, we will liberally construe that. We don't make up facts. So when they allege facts, this is what happened, there's no liberal construction in that sense. They tell you what happened. You don't get to then say, oh, they actually meant to say this because that's not the standard we're under under AEDPA. We are determining what. But aren't we, isn't your argument, we're going to look at the words that he used. Right. And we're going to come up with all of these hypothetical things it might have meant as opposed to what's a reasonable construction of what was said. Any reasonable construction, Your Honor. That's the standard. So if there's any reasonable construction of that phrase that is not an express directive to appeal, then we defer to the state court's ruling, which is there was no deficient performance and no prejudice. And what do we make of the fact that counsel did nothing? I mean, there is some logic to the notion that if she did nothing, that meant that she understood that she was supposed to appeal rather than that she thought she was supposed to go and talk to somebody else about it. I'm glad you brought that up, Your Honor. We actually don't know what counsel did. All we know, assuming that we believe that sticky note that she never contacted appellate counsel, is that she didn't contact appellate counsel. We don't know if she had another conversation with Petitioner. He never alleges in his pleadings, she never talked to me again. He doesn't say that anywhere. So she could have gotten back to him and said, hey, I ran into the public defender as I was leaving the courtroom. I talked to him, and they said, no, there's no issues here. Isn't that pretty much an unreasonable construction of his affidavit? No, that's actually the construction that we have to take because we are under strickland deference here, and we are assuming that counsel acted competently. So if there was an outstanding question, we're assuming that she got back to him on it. But was there an outstanding question? We don't know. He was not clear in his pleading, and that's why he didn't get relief in state court. Well, state court, they got an advantage here because they didn't say anything about what these words meant, what was a reasonable construction of these words. They just said denied. But they don't have to say that, Your Honor. That's why I said, don't they get an advantage by saying nothing? It's not an advantage, Your Honor. This forum is one for guarding against extreme miscarriages of justice. The standard is set up in such a way to both respect the state court decisions and provide petitioners an avenue of last resort. And here we have a state court decision that was reasonable, and therefore we don't disturb it. I just want to clarify. You agree that we don't go and look to whether there was any merit to the appeal, that the standard here for failing to file a notice of appeal when there's an express direction to do so, prejudice is presumed because the defendant lost his right to appeal. So Roe v. Flores-Ortega sets forth the prejudice standard in this situation. They rejected a per se prejudice standard. They don't make you show a reasonable probability of a different outcome on appeal, but they still make a defendant prove causation. So in this case, the petitioner still has to prove that but for his attorney's failure to file a notice of appeal, he would have taken that appeal. And in this case, we don't have prejudice either because of California's process for seeking belated notices of appeal. You don't find those cases distinguishable? Canales v. Roe, Your Honor, I think is directly on point. In that case, this court held that a petitioner's counsel didn't take an appeal after he asked him to, but then he later failed to file a belated notice of appeal despite being warned by the court that he didn't have an appeal. That's the distinguishing, being warned by the court. So he knew that no appeal had been taken. Well, we don't have those. We don't know exactly when petitioner found out in this case he didn't have an appeal, but we know he did because he subsequently filed his claims in state court. So wasn't it too late by then? It wouldn't have been if he had alleged the proper facts. So if he had come in and said, I found out I didn't have an appeal a month ago, and I am now filing this claim asking you for a belated notice of appeal, he likely would have gotten one. So under California law, there's no time limit? There is no time limit. You just have to allege diligence. You have to show that you acted diligently. And if you do so, then California will give you a belated notice of appeal. But he didn't allege any of that in state court. He didn't show when he found out he didn't have an appeal. He didn't show what steps he took, and he didn't show anything that indicated that he really did anything between the time of his conviction and the time he filed his habeas petition 10 months later. Okay. Any other questions? No? Okay. Thank you very much for your argument. Thank you, Your Honors. Proceed. The government says we don't make up facts. We don't need to make up any facts in this case. I submit that when the initial statement that he made to counsel is, again, I think I agree with Judge Bolton. That statement on its own really indicates the reasonable interpretation that he told his attorney he wanted to appeal. And maybe. I mean, in my prior life, I was a defense attorney. A client tells me that. Maybe I look at that and think, yeah, you know, I think that's a request for an appeal. But that's not what we have to do at this point. Are there any other reasonable or possible, actually, possible reasonable understandings? Right. And that's the problem here, though. I think that's when we go to that second statement, which is what his attorney said to him. Again, with the 40-year-to-life sentence, really the last shot on direct appeal he's ever going to have, if counsel construed this to be just a general inquiry, which is what the district court found, counsel that's not dumb. That's the word they use over and over in the hypothetical thing. Counsel that is not dumb is going to consult with the appellate attorney or do their own research and figure out do we have a reason to appeal if it was left open. And regardless of what the result of that would have been, counsel would have contacted Mr. Harris. There's no other explanation for the silence to Mr. Harris and to the appellate counsel than the attorney understood that statement to be an express direction to her to appeal the denial of SB 620 relief. I have a question about one of Mr. Feinsatz's last statements in response to my question on the prejudice prong. Yes. Saying that he still could have filed a late appeal if he had only asked. Is that so under California law? There's no, like, you have to ask within 30 days when the time expires or something? That he still had the right before he filed his state habeas or post-conviction relief that he could have said to the state appellate court, I just found out my lawyer didn't appeal. I want to file a late appeal. I'm not sure exactly what the time frame would be for Mr. Harris to have done that. But we're talking nine months after the resentencing occurred. And, you know, Canalis, the facts were completely different in terms of the contact from the trial court twice, once a week after the notice was late, once five months later. He waited, I think, 13 more months to actually try to perfect the appeal himself. In this case, I think that Mr. Harris took very reasonable steps, which was immediately file that state habeas, include in there the correspondence with his appellate attorney in terms of what had happened. And so I think that even if that was an avenue that was available to him, he took an equally reasonable tact, which was to file the state habeas, I believe initially in the California Court of Appeal, to try to handle it that way. And so he did what he could and what he thought he should do to try to perfect his appeal, unlike Mr. Canalis, who waited 18 months and did nothing. So I think they're distinguishable. And in this case, Mr. Harris did what he thought he should do, given his legal experience and given his background, to try to perfect his appeal. Okay. Any other questions? No. Thank you. Okay. Thank you very much. Thank you very much. We thank both counsel for their arguments. In this case, this matter is now submitted.
judges: THOMAS, MENDOZA, Bolton